UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JERRY SPICER,

              Plaintiff,

      v.

DR. HENRY RICHARDS,

              Defendants.

Case No. C07-5109 FDB/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**December 21, 2007**

      Before the Court are the motions for declaratory relief of Plaintiff Jerry Spicer (Dkt. # 12) and

the response and cross-motion for summary judgment of Defendant Dr. Henry Richards (Dkt. # 13).[1]

Plaintiff asks the Court to find certain policies of the Special Commitment Center (SCC) where he is

housed to be unconstitutional as applied.  (Dkt. # 12).  Defendant argues that Plaintiff is not entitled to

the declaratory relief he seeks and, alternatively moves for summary judgment in his favor regarding

certain policies of the SCC.  (Dkt. # 13).

      In support of his motion, Defendant submits the Declarations of Henry Richards (Dkt. # 14),

Becky Denny (Dkt. # 15) and Donna Hamilton (Dkt. # 16).  Plaintiff has filed a reply to Defendant's

---

[1]Defendant filed his response to Plaintiff's motion for declaratory relief with supporting
declarations as a separate, but identical, motion for summary judgement with supporting
declarations on the same day.  Those documents are docketed as Dkt. # 17, 18, 19, and 20.  For ease
of reference, the Court will refer to the first set of documents only.

REPORT AND RECOMMENDATION - 1

1    response.  (Dkt. # 23).[2]

2        After careful review of the motions, supporting declarations and documents, and viewing the

3    facts in the light most favorable to the Plaintiff, the undersigned finds that Plaintiff is not entitled to the

4    declaratory relief he seeks.  The undersigned also recommends entry of partial summary judgment as

5    to Plaintiff's claims relating to SCC's privilege level system and sexually explicit materials

6    policies.

7

8                   **I.  SUMMARY OF CLAIMS AND RELIEF REQUESTED**

9        Plaintiff Jerry Spicer is a resident of the Special Commitment Center (SCC), a Washington

10   Department of Social and Health Services (DSHS) facility for the care and treatment of persons

11

12   detained or civilly committed under Wash. Rev. Code ch. 71.09, Washington's sexually violent

13   predator statute. (Dkt. 6). Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging that

14   Defendant, SCC Superintendent Dr. Henry Richards, violated his constitutional rights during his

15   confinement at the SCC. (*Id*., ¶ 2).

16        Plaintiff asks this Court to declare that the SCC's policies regarding indigent residents,

17   access to sexually explicit media, and the privilege level system violate his constitutional rights as

18

19   applied.  (Dkt. # 12, p. 7).  In his motion for summary judgment, Defendant Richards asks the Court

20   to grant summary judgment dismissal of Plaintiff's claims relating to SCC's privilege level system

21   and sexually explicit materials policies.

22                               **II.  FACTS**

23        The following background facts relating to the SCC's treatment program and policies were

24   provided by Defendant.  With the exception of his status as a sexually violent predator (as noted

25          ————————————————

26        [2]By Order dated September 5, 2007, the Court granted Plaintiff an extension of time to file a
reply to Defendant's cross-motion for summary judgment and stayed discovery pending ruling on

27   the parties' motions.  (Dkt. # 22).

28   REPORT AND RECOMMENDATION - 2

below), these facts are not disputed by Plaintiff.

The SCC is a total confinement treatment facility for persons whom a state court has committed or found probable cause to detain as sexually violent predators. WASH. REV. CODE § 71.09.020(13). A sexually violent predator is a person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility. WASH. REV. CODE § 71.09.020(16).

Defendant Richards submitted his declaration, attesting that Plaintiff is detained at the SCC following a finding of probable cause that he is a sexually violent predator. (Dkt. # 14, ¶ 2). Plaintiff alleges that he has not been committed (Dkt. # 6, p. 2, ¶ 1), and states in his motion and response that he is a pretrial detainee who has not been found to be a sexually violent predator. (Dkt. # 12, p. 1; Dkt. # 23, p. 1).

Plaintiff arrived at the SCC in April, 2005. (*Id.*). He declines to participate actively in the sex offender treatment available to him at the SCC. (Dkt. # 6, p. 2, ¶ 5).

**A.     The SCC's Treatment Program**

**1. Level System**

SCC Policy No. 236, *Resident Levels of Privilege* was developed by the SCC management team to encourage and recognize residents' responsible behavior, and to maintain a therapeutic treatment environment within the total confinement facility. (Dkt. # 14, ¶ 3, Exh. 1). Like other areas of the SCC program, the level system has evolved relative to the growing population and growing opportunities for the residents at the SCC. (*Id.*). The level system provides a consistent approach to awarding privileges to the residents living within the total confinement setting. Residents who maintain responsible behavior may obtain advanced privilege levels, thereby gaining

REPORT AND RECOMMENDATION - 3

increased access to recreational, vocational, and other program services. (*Id*.).  Residents

who present behavioral challenges, fail to comply with SCC policies, or engage in counter-

therapeutic behaviors or activities may lose privileges. (Dkt. # 13, Exh. 1).

Residents who elect to participate actively in the sex offender treatment program

 made available to them at the SCC may earn up to a privilege level 5. Residents who decline

actively to participate in the sex offender treatment program made available to them at the

SCC may earn up to a privilege level 4. (*Id*.).

Residents receive notice and an opportunity to be heard when subject to a potential

reduction in privilege level.  (*Id*.).  Depending on the nature of the behavior at issue, a resident

may receive an immediate sanction, such as room restriction or loss of yard time, pending the

hearing. (*Id*..).

**2.  Reading Materials and Visual Media**

To maintain a treatment oriented environment, the SCC limits residents' access to certain

media.  (Dkt. # 13, Exh. 2, Policy No. 208, *Sexually Explicit and Related Material*).  The specific

media a particular resident may not possess is based on his treatment team's professional judgment

of the negative effect of such media on the specific resident and his sexually violent offense history.

For example, a resident with a history of offending against children may not be allowed to possess

depictions of children characteristic of the resident's victim range/profile(s). (*Id*., p. 2, ¶ I(B)).  A

resident with a history of violent rape against women may not be allowed to possess sexually

explicit depictions of women or depictions of sexual violence. (*Id*.).

Based on Policy 208, Plaintiff's forensic therapists review reading materials and visual

media plaintiff receives at the SCC to determine whether, in the exercise of their professional

judgment, the materials are appropriate for Plaintiff to possess. (*Id*.).

REPORT AND RECOMMENDATION - 4

**3.  SCC Policy 232, Provisions for Indigent Residents**

The SCC has promulgated a policy which describes when services will be provided to residents who are indigent.  (Dkt. # 13, Exh. 3, SCC Policy 232, *Provisions for Indigent Residents*).  Residents who have been credited with no more than a total of $25.00, less the monthly amount of any legal financial obligation, from any source, including outside resources, for deposit into their trust fund account during the preceding thirty days, are considered indigent under the policy and are eligible to receive state issued supplies as described in the policy. (*Id*).

Plaintiff admits that he has income of $400.00 per month. (Dkt. 1, pg. 3). Plaintiff received over $3,700.00 from his participation in the SCC's vocational program during the first six months of 2007. (Dkt. # 15, ¶ 2).  Plaintiff is not indigent as defined in the policy. (Dkt. # 13, Exh. 3).

**III.  STANDARD OF REVIEW**

In examining Defendants' motions, the Court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

To prevail on his motion for declaratory relief, plaintiff must point out the absence of evidence to support Defendant's case. *Celotex*, 477 U.S. at 325.  A complete failure of proof

REPORT AND RECOMMENDATION - 5

concerning an essential element of the non-moving party's case renders all other facts immaterial, and the moving party is necessarily entitled to judgment as a matter of law. *Id.* at 324.

## IV.  DISCUSSION

**A.**  **The Court May Decline to Consider Plaintiff's Motion Because It Was Drafted By Vexatious Litigator Richard Roy Scott In Violation of Prior Court Orders**

Defendant urges the Court to decline to consider Plaintiff's motion because it was drafted by vexatious litigator Richard Roy Scott in violation of this Court's case management order entered in *Scott v. Nerio*, Case No. C06-5340RJB.  Mr. Scott has been prohibited from filing documents in other cases for other residents of the Special Commitment Center. (*See* Dkt. # 16, Attach. D herein).  Also, in *Fox v. Richards*, C06-5063 RBL/KLS, (Dkt. 36, fn. 1), the Plaintiff in that case was reminded that "Mr. Scott may not file documents on his behalf and future filings submitted by Mr. Scott on Plaintiff's behalf shall not be considered by the court".  (*See* Dkt. # 16, Attach. E herein).

Plaintiff's Complaint (Dkt. # 6) is virtually identical to a number of other cases brought or facilitated by Richard Roy Scott.  (Dkt. # 16, Attachments A-C, *Scott v. Richards*, C04-5582 RBL/JKA (Dkt. # 19 therein) (issues including level system, access to cellular telephones, pagers, and computer devices, trailer visits, condition of the SCC dining room, and declaratory relief regarding these issues); *McManus v. Richards*, C05-5564 FDB/JKA, (Dkt. # 4 therein) (same issues), *Fox v. Richards*, C06-5063 RBL/KLS, (Dkt. # 4 therein) (same issues).  Defendant argues that a comparison of Mr. Scott's previous motions indicates that he drafted the motion in this case: (1) the same typewriter appears to have been used as in *Scott v. Nerio,* C06-5340RBJ (Dkt. 16, Attach. J); (2) the same language style is utilized as in Mr. Scott's previous motions, *i.e.*, Plaintiff is referred to in the plural and the use of sentence fragments as in *Scott v. Nerio*, Dkt. # 16, Attach. J,

p. 2 and Attach. K, p. 5).

Most notably, however, Plaintiff has not responded to Defendant's accusation that Mr. Scott is improperly litigating this action, in violation of the Court's case management order.  Plaintiff received notice of this accusation, along with Defendant's supporting documents with the filing of Defendant's Response (Dkt. # 13, 16) and Defendant's Motion for Summary Judgment (Dkt. # 17, 20).  In granting Plaintiff's motion for an extension of time, the Court specifically noted as follows:

> [T]he Defendants argue that the parties should not be forced to engage in the expense
> of discovery while issues not related to this action are being litigated. Defendant
> claims that Plaintiff's motion for injunctive relief was drafted by vexatious litigator
> Richard Roy Scott and is not related to issues raised in Plaintiff's complaint. Until
> these preliminary issues are resolved, the Court finds that a stay of discovery is
> appropriate.

Despite being given additional time, Plaintiff has provided no response.  This lack of response may be considered by this Court as an acknowledgment that Defendant's argument has merit.  *See*  Local Rule 7 (b)(2).  Accordingly, the undersigned finds that this Court may decline to consider Plaintiff's motion in its entirety because it was drafted by vexatious litigator Richard Roy Scott in violation of this Court's case management order entered in *Scott v. Nerio*, Case No. C06-5340RJB.

Alternatively, viewing the facts in the light most favorable to the Plaintiff, the record reflects that Plaintiff is not entitled to the declaratory relief he seeks.

**B.     SCC Policy 232, Provisions for Indigent Residents**

Plaintiff makes no claim regarding the SCC Policy for indigent residents in his Complaint. (Dkt. # 6).  In his motion for declaratory relief, Plaintiff claims that SCC's policy, in effect since July 2007, forces "anyone who has $25 in his or her account to choose between litigation or having tooth paste, shoes or even underclothes [sic]."  (Dkt. # 12, p. 2).  Plaintiff claims that the indigent

REPORT AND RECOMMENDATION - 7

policy (when read together with the revised level system policy) is not only unconstitutional as

applied but illegal because it violates RCW 71.09 requirement that all persons involuntarily

detained must be provided with basic care such as medical, clothing, and food.  (*Id*.)   In support,

Plaintiff relies on Exhibit 1 attached to his motion.  (*Id*., Exh. 1).  That document is a copy of a

redacted email between two unidentified individuals discussing whether an unnamed resident

should receive a level promotion.  (*Id*.).

      The undisputed record reflects that the SCC has promulgated a policy which describes when

services will be provided to residents who are indigent.  (Dkt. # 13, Exh. 3).  Residents who have

been credited with no more than a total of $25.00, less the monthly amount of any legal financial

obligation, from any source, including outside resources, for deposit into their trust fund account

during the preceding thirty days, are considered indigent under the policy and are eligible to receive

state issued supplies as described in the policy. (*Id*)  Plaintiff admits that he has income of $400.00

per month. (Dkt. 1, pg. 3). Plaintiff has received over $3,700.00 from his participation in the SCC's

vocational program during the first six months of 2007. (Dkt. # 15, ¶ 2).  Therefore, Plaintiff is not

indigent as defined in the policy. (Dkt. # 13, Exh. 3).

      This claim is not properly before the Court as Plaintiff did not raise it in his Complaint.

Further, Plaintiff provides no evidence in support of his conclusory allegation that the policy is

unconstitutional as applied.  Plaintiff has provided no affidavits in support of his allegations, no

copies of the policies he claims are unconstitutional as applied to him, and he fails to identify which

of his constitutional rights have been violated.  Plaintiff argues generally that the SCC cannot deny

basic care to any involuntarily detained person, yet provides no evidence that he is being denied any

such basic care.  In addition, there is no evidence that Plaintiff is indigent or that he has been unable

to procure clothing and hygiene supplies as the result of the policy being applied to him.

REPORT AND RECOMMENDATION - 8

Accordingly, the undersigned recommends that Plaintiff's motion for declaratory relief that SCC's indigent policy is unconstitutional as applied be denied.

**C.      SCC Policy 236, Resident Levels of Privilege**

Plaintiff claims that Defendants deny him certain privileges under the level system to coerce him into treatment. (Dkt. # 13 at ¶¶ 5, 6). Plaintiff admits he does not participate in the program. (Id. at ¶ 6; Dkt. # 6, ¶ 5). This Court has previously ruled that SCC's level system is not "punishment," but a constitutionally sound protocol for encouraging pro-social behavior and treatment participation by SCC residents.   In *Capello v. Seling*, for example, the Court held that:

> The plaintiff s allegations regarding use of a level system, which gives privileges to persons who engage in treatment, is likewise flawed. The granting of privileges to persons who engage in treatment does not mean that persons who do not receive those privileges are in any way being punished. To impose liability on any named defendant, plaintiff needs to show a violation of a right of constitutional magnitude.

(Dkt. # 16, Attach. H, *Capello v. Seling*, C02-5242RBL/KLS, Dkt. 452 therein, p. 8).

And, in *Fox v. Richards*, C06-5063 RBL/KLS, this Court found that a non-treatment participant failed to state a claim for relief on the basis of the SCC's level system because no constitutional right exists to receive the same privileges rewarded to residents who participate in treatment. (*See* Dkt. # 16, Attach. F and G, Dkt. # 37 and 43 therein).

Plaintiff argues, however, that SCC Policy 236 is punitive in that it punishes patients who would either decline treatment or quit in violation of the principles recently stated in *Hydrick v. Hunter*, 500 F.3d 978 (9th Cir. 2007).  (Dkt. # 12, p. 6).  The *Hydrick* plaintiffs alleged that they were forced to participate in treatment, were barred from obtaining higher access levels until they signed contracts admitting that they have an illness and need treatment and that if they attend treatment and did not participate, they are found to be not progressing in the program.  *Id*. at 991.

In this case, however, there is no evidence that non-participants in SCC's treatment program

REPORT AND RECOMMENDATION - 9

are being punished.  The uncontroverted evidence reflects that residents who voluntarily elect to participate in the treatment program may obtain advanced privilege levels, thereby gaining increased access to recreational, vocational, and other program services. (Dkt. # 14, ¶ 3).   Residents who elect to participate actively in the treatment program may earn up to a privilege level 5. (*Id*.).  Residents who decline actively to participate in the treatment program may earn up to a privilege level 4. (*Id*.).

Construing the facts alleged by Plaintiff as true and in the light most favorable to Plaintiff, it is clear that Plaintiff cannot state a claim for relief here as he has no constitutional right to the same privileges rewarded to residents who participate in sex offender treatment.  In *Hydrick*, the Ninth Circuit noted that the stakes for participation in treatment were so high, that the deprivations involved in refusing to participate in treatment might rise to the level of compulsion that violates the First Amendment.  500 F.3d at 992.  Here, all that Plaintiff has shown is that if he does not participate in a voluntary program, he will not be awarded the same privileges as those residents who do participate in the treatment.  He alleges no deprivations or retaliation rising to any constitutional violation.

Accordingly, the undersigned recommends that Plaintiff's motion for declaratory relief as to SCC's level system be denied and summary judgment dismissal in favor of Defendant as to SCC Policy 236 be granted.

**D.    SCC Policy 208, Sexually Explicit and Related Material**

Plaintiff alleges that Defendant has violated his freedom of speech by restricting the books, magazines or movies he may view, even though he is not in treatment.  (Dkt. # 6, ¶ 8).   In his motion for declaratory relief, Plaintiff argues that the term "sexually orientated" in SCC's policy is vague, overly broad and renders application of Policy 208 (*Sexually Explicit and Related Material*)

1  unconstitutional.  (Dkt. # 12, p. 3; Dkt. # 13, Exh. 2, Policy 208).  Plaintiff further argues that

2  different standards should apply to persons who are not in treatment.  (*Id.*, p. 4).  In support,

3
4  Plaintiff attaches emails between SCC staff members discussing application of SCC Policy 208 to

5  written materials and television programs.  (Dkt. # 12, Exh. 4).  Plaintiff maintains that Policy 208

6  is unconstitutional as applied because mailroom staff deny magazines containing certain images as

7  "not appropriate for the treatment environment" when these same images can be viewed on tv or

8  newspaper."  (Dkt. 23, p. 3).

9          In the civil commitment setting, a patient's liberty interests are balanced against the relevant

10  state interests to determine whether the state has violated the patient's constitutional rights.

11
   *Youngberg v. Romeo*, 457 U.S. 307, 318 (1982).   The law generally requires a careful balancing of

12  the rights of individuals who are detained for treatment, not punishment, against the state's interests

13
   in institutional security and the safety of those housed at the facility.  See also, *Hydrick v. Hunter*,

14
15  500 F.3d 978, 990 (9th Cir. 2007) (citing *Youngberg*, 457 U.S. at 319-22):

16          In weighing those interests, it cannot be ignored that, unlike the plaintiff in
           *Youngberg*, who was civilly committed because of mental infirmities, SVPs have
17          been civilly committed subsequent to criminal convictions and have been adjudged
           to pose a danger to the health and safety of others.  Therefore, the rights of SVPs
18          may not necessary be coextensive with those of all other civilly detained persons.

19
20  *Hydrick*, 500 F.3d at 990.

21          Challenges to prison restrictions that are asserted to inhibit First Amendment interests must

22  be analyzed in terms of the legitimate policies and goals of the corrections system.  *Pell v.*

23  *Procunier*, 417 U.S. 817 (1974).  Similarly, First Amendment challenges of SCC policies must be

24  analyzed in terms of the legitimate polices and goals of SCC's treatment program.

25          The undisputed evidence reflects that the SCC is a total confinement treatment facility

26  designed for persons whom a state court has committed or found probable cause to detain as

27
28  REPORT AND RECOMMENDATION - 11

sexually violent predators under section 71.09.020(13).  "(I)t is irrefutable that the State has a compelling interest both in treating sex predators and protecting society from their actions." *In re Young,* 122 Wash.2d 1, 26, 857 P.2d 989, 1000 (1993).  "The treatment needs of (the SVP) population are very long term, and the treatment modalities for this population are very different than the traditional treatment modalities for people appropriate for commitment under the involuntary treatment act."  See WASH.REV. CODE 71.09.010.

Although Plaintiff argues that Policy 208 cannot be applied equally to the written materials received by SCC residents and DVD movies or television shows that residents may view, this does not lead to the conclusion that the policy is not rationally related to the state's legitimate interest in maintaining institutional security and a therapeutic treatment environment.  The state's interest in providing comprehensive treatment to sexually violent predators outweighs Plaintiff's interest in viewing counter-therapeutic material which could interfere with the state-mandated treatment program or which could ultimately endanger the public, SCC residents and staff.

In addition, although Plaintiff disputes that he is being detained at the SCC following a finding of probable cause that he is a sexually violent predator, he has failed to provide any authority to support a constitutional right to view counter-therapeutic materials within a total confinement treatment facility.

Viewing all the evidence in the light most favorable to Plaintiff, the undersigned concludes that Plaintiff has failed to show that SCC's Policy 208 is not rationally related to SCC's legitimate interest in maintaining institutional security and a therapeutic treatment environment.  Accordingly, the undersigned recommends that Plaintiff's motion for declaratory relief be denied and summary judgment dismissal in favor of Defendant as to Policy 208 be granted.

REPORT AND RECOMMENDATION - 12

## V.  CONCLUSION

For the reasons stated above the Court should **DENY** Plaintiff's motion for declaratory relief (Dkt. # 12) and **GRANT** the motion for partial summary judgment of Defendant (Dkt. # 13, 17).  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on **December 21, 2007**, as noted in the caption.

DATED this  20th   day of November, 2007.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13